Clifford BLUMENFELD, Plaintiff-Respondent,

CIGNA HEALTHCARE, Involuntary-Plaintiff,

v.

Ebony JEANS, Defendant,

ERIE INSURANCE EXCHANGE, Defendant-Appellant.

Court of Appeals

*No. 2010AP1773. Submitted on briefs March 30, 2011.
—Decided June 29, 2011.*

2011 WI App 107

(Also reported in 804 N.W.2d 692.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael S. Murray* and *Michael J. Cerjak* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert I. DuMez* and *John V. O'Connor* of *O'Connor, DuMez, Alia & McTernan, S.C.*, of Kenosha.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J.   This dispute lies at the intersection between joint and several liability and the collateral source rule. Erie Insurance Exchange is appealing from a judgment against it after its insured, Luther Wray, was found 60% at fault for injuries to Clifford Blumenfeld in a traffic accident. The jury also found that Ebony Jeans, an uninsured motorist, was 40% at fault for Blumenfeld's injuries. Because Wray was found more than 51% at fault, judgment was entered against Erie for 100% of the damages found by the jury pursuant to Wisconsin's joint and several liability law. *See* WIS. STAT. § 895.045(1) (2009–10).[1] Erie argues that since Blumenfeld recovered money from his insurance company for Jeans' contribution to his injuries prior to trial (through his own uninsured motorist policy), it should not have to pay the 40% of liability attributable to Jeans. Blumenfeld counters that because his insurer expressly waived its subrogation rights against Jeans, the collateral source rule

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

applies to allow him to recover the entire jury award. We affirm—because Blumenfeld's insurer expressly waived its subrogation rights against Jeans, the collateral source rule applies.

¶ 2.   Blumenfeld originally sued Wray, Jeans, Erie (as Wray's insurer), and Country Mutual Insurance Company, his own insurer. Wray was dropped from the suit by the parties' stipulation. Country Mutual was dropped after it settled with Blumenfeld. The settlement agreement stated, in pertinent part:

> This is not a general release nor is this to be construed as a "Pierringer"[2] release, whereby Clifford Blumenfeld satisfies any portion of his tort claims against Erie Insurance and/or Ebony Jeans. Under this release, Clifford Blumenfeld specifically reserves all his rights against Erie Insurance and Ebony Jeans. In the event Clifford Blumenfeld obtains a recovery . . . from Ebony Jeans, Clifford Blumenfeld will either apply the proceeds of said recovery, or assign any judgment to Country Mutual Insurance Company . . . . This does not apply to any recovery obtained by Clifford Blumenfeld from Erie Insurance.

After the jury determined that Wray was 60% at fault, Blumenfeld moved for judgment on the verdict. Erie asked the trial court to limit its exposure to 60% of the total verdict because further exposure "would be inequitable and contrary to Wisconsin law." The trial court entered judgment against Erie for the full amount of

---

[2] *See Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963). "[A] Pierringer release operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to non-settling defendants and to bar subsequent contribution actions the non-settling defendants might assert against the settling defendants." *VanCleve v. City of Marinette,* 2003 WI 2, ¶ 39, 258 Wis. 2d 80, 655 N.W.2d 113.

the damages found by the jury. It also entered judgment on Erie's cross-claim against Jeans.

¶ 3.   WISCONSIN STAT. § 895.045(1) governs when a tortfeasor is considered jointly and severally liable for a plaintiff's damages:

> The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.

So, in this case, Blumenfeld may collect up to 40% of the damages awarded by the jury from Jeans. However, to the extent that Jeans does not pay, Blumenfeld may collect up to 100% of the damages from Erie.

¶ 4.   When applicable, the collateral source rule provides that a personal injury plaintiff's recovery "is not to be reduced by the amount of compensation received from other sources, i.e., sources 'collateral' to the defendant." *Lambert v. Wrensch*, 135 Wis. 2d 105, 111 n.5, 399 N.W.2d 369 (1987) (citation omitted). This rule ensures that the plaintiff, rather than the tortfeasor, gets the benefit of any windfall. *See Voge v. Anderson*, 181 Wis. 2d 726, 732–33, 512 N.W.2d 749 (1994). The rule has been held inapplicable, however, in cases where a plaintiff recovers from an insurance company which has retained a subrogation interest in the tortfeasor's payment. *See Lambert*, 135 Wis. 2d at 121. In other words, a second source of money is not "collateral" to a tortfeasor when that source retains the right to claim any extra money the tortfeasor is forced to pay.

¶ 5. This case, therefore, hinges on whether Blumenfeld's insurer waived its subrogation rights against Jeans in the settlement agreement with Blumenfeld. Whether an insurer's subrogation rights limit a plaintiff's right to recovery is a question of law that this court reviews "independently of the determination of the circuit court." *Paulson v. Allstate Ins. Co.*, 2003 WI 99, ¶ 19, 263 Wis. 2d 520, 665 N.W.2d 744 (citations omitted). Whether the collateral source rule applies in a particular case is also a question of law we review independently, but with the benefit of the analysis of the trial court. *Id.*

¶ 6. Insurers may waive their subrogation rights, and when they do so, the collateral source rule applies. *Anderson v. Garber*, 160 Wis. 2d 389, 401 n.5, 466 N.W.2d 221 (Ct. App. 1991); *see also* WIS. STAT. § 632.32(4)(c). Blumenfeld argues that his insurer waived its subrogation rights because the agreement states that "[u]nder this release, Clifford Blumenfeld specifically reserves all his rights against Erie Insurance and Ebony Jeans." Erie argues that Country Mutual actually retained its subrogation interest because the agreement further states that "[i]n the event Clifford Blumenfeld obtains a recovery . . . from Ebony Jeans, Clifford Blumenfeld will either apply the proceeds of said recovery, or assign any judgment to Country Mutual Insurance Company."

¶ 7. Subrogation is "the substitution of the insurer *in place of* the insured, to whose *rights,* the insurer *succeeds in relation to the debt* and gives *to the substitute all the rights, priorities and remedies* of the insured, for whom the insurer is substituted." *Fischer v.*

435

*Steffen*, 2010 WI App 68, ¶ 7, 325 Wis. 2d 382, 783 N.W.2d 889, *aff'd*, 2011 WI 34, 333 Wis. 2d 503, 797 N.W.2d 501 (citing LEE R. RUSS & THOMAS F. SEGALLA, 16 *COUCH ON INSURANCE 18*, 222:5 (3d 2005)). Put simply, the right to stand in place of Blumenfeld was precisely what Country Mutual gave up when it signed an agreement stating that "Blumenfeld specifically reserves all his rights against Erie Insurance and Ebony Jeans." It then reserved the right to be reimbursed "[i]n the event Clifford Blumenfeld obtains a recovery . . . from Ebony Jeans." It gave up its rights with regard to any recovery from Erie (Luther Wray's insurer) entirely.

¶ 8.  We are confident that in addition to complying with the letter of the law, our holding is consistent with the purpose of the collateral source rule and its exceptions as outlined in case law. This is precisely the type of situation that the collateral source rule was meant to address. As our supreme court has stated in the past, the collateral source rule exists to ensure that "[t]he tortfeasor who is legally responsible for causing injury is not relieved of his [or her] obligation to the victim simply because the victim had the foresight to arrange, or [the] good fortune to receive, benefits from a collateral source for injuries and expenses." *Paulson*, 263 Wis. 2d 520, ¶ 30 (quoting *Koffman v. Leichtfuss*, 2001 WI 111, ¶ 29, 246 Wis. 2d 31, 630 N.W.2d 201).

¶ 9.  Prior to the accident, Blumenfeld chose to purchase an uninsured motorist policy and paid premiums for it. Then, before trial, Blumenfeld and his insurer both made strategic decisions to settle on certain terms, including a waiver of the insurer's subrogation rights and a provision for reimbursement if and only if Blumenfeld recovered from Jeans. As we explained above, Erie became legally responsible for 100%

of Blumenfeld's damages as a result of the trial. Erie exposed itself to this possible result when it made the strategic decision to go to trial rather than settle. Blumenfeld's choice to equip himself with uninsured motorist coverage and his favorable settlement agreement under that policy is of no concern to Erie. The collateral source rule ensures that any extra money goes to Blumenfeld, not to offset the tortfeasor's insurer's liability.

¶ 10.   Part of Erie's argument is that Blumenfeld's payment from his insurer should somehow count as payment for the damages attributable to Jeans. We disagree. Importantly, Erie retains the right to recover money from Jeans for her responsibility as determined by the jury. And Blumenfeld's insurer has not retained any right to interfere with a recovery from Jeans by Erie if indeed it occurs—it is only if *Blumenfeld* "obtains a recovery . . . from Ebony Jeans" that *Blumenfeld* becomes responsible for reimbursing his insurer for its payment. So, even though the plaintiff here receives a double recovery (a possibility contemplated by the collateral source rule), Erie retains all of its normal rights to recover from the other tortfeasor—it just does not gain the benefit of Blumenfeld's uninsured motorist coverage.

*By the Court.*—Judgment and order affirmed.