COURT OF APPEALS
DECISION
DATED AND FILED

December 30, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP314**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2018CV1545**

**IN COURT OF APPEALS
DISTRICT IV**

KATHLEEN KUNDERT,

   PLAINTIFF-RESPONDENT,

CALI JOLIE FREITAG,

   PLAINTIFF,

 V.

WESTERHOF HOMES, LLC,

   DEFENDANT-APPELLANT,

GENERAL CASUALTY COMPANY OF WISCONSIN,

   INTERVENOR.

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed.*

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in** WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. Westerhof Homes, LLC appeals an order on summary judgment that dismissed its counterclaims for negligent property damage and breach of contract brought against its former tenant, Kathleen Kundert. For the following reasons, we affirm the circuit court order granting summary judgment to Kundert.

## BACKGROUND

¶2 The following facts and procedural history are undisputed unless otherwise noted. Beginning on September 1, 2015, Kundert rented a residential unit owned by Westerhof Homes, a business owned and operated by Jacob Westerhof. Kundert lived in the unit with her then-minor child, Cali Jolie Freitag,[1] until shortly after the events giving rise to this litigation.

¶3 On June 30, 2016, Kundert sent an email to Westerhof, stating:

> Jake,
>
> [The upstairs neighbor's] air conditioner is leaking or som[e]thing is leaking into my closet! The whole thing is Mold!! Maybe you should move me next door?
>
> Mine is easier to rent but also needs carpet in the front room and front bedroom and Paint[.]

---

[1] Freitag was a minor during the events giving rise to this litigation and during the circuit court proceedings but is now an adult.

2

I will not be able to stay in the bedroom with mold!

Thanks[,]

Kathleen

¶4      As discussed in more detail below, the parties dispute whether Kundert contributed to the damage in the unit by not reporting issues of mold and water leakage to Westerhof Homes in a timely manner. It is not disputed, however, that: (1) mold infiltration and water leakage occurred in Kundert's unit as a result of drainage failure in the drain line of the upstairs neighbor's combination furnace/air conditioner, causing water leakage into Kundert's downstairs unit; and (2) the brick on the exterior of the building had been improperly installed, resulting in extensive water damage, including the appearance of "black stuff," on the exterior sheathing between the drywall and the brick.[2]

¶5      Kundert and Freitag vacated the unit in July 2016, although some of their personal items remained in the unit until October or November. Kundert paid rent through July 31.

---

[2] The evidence reflects that water may have also leaked into Kundert's unit from the upstairs neighbor's toilet; however, Kundert does not identify the leaking toilet as a specific cause of the resulting damage to the unit.

The parties agree that water leakage from the upstairs unit caused mold infiltration and water damage. Kundert further argues that improperly installed exterior brick caused water and moisture to gather behind the brick, eventually causing mold to grow behind the drywall. On this point, Oscar Gutierrez—the representative of the remediation firm that performed work on the unit after Kundert and Freitag moved out—testified during his deposition that "there was extensive damage to the exterior sheathing … from the brick layer, because it was installed improperly" and that the "black stuff" appearing in photographs "shows extensive damage to sheathing due to water damage." However, Gutierrez did not specifically testify that the "black stuff" was mold or that the water damage from the improperly installed brick caused mold growth.

As it did in the circuit court, Westerhof Homes disputes on appeal that improperly installed exterior brick caused water and mold to appear in Kundert's unit. Our analysis, and the resolution of this appeal, do not turn on any conclusion that the installation of exterior brick was a second potential source of mold and water leakage in Kundert's unit.

¶6      In June 2018, Kundert and Freitag (collectively, "Plaintiffs") brought a negligence claim against Westerhof Homes and its insurer, later identified as General Casualty Company of Wisconsin. They alleged that they "were exposed to high levels of airborne mold" during the course of their tenancy; that they were allergic to mold; that, around July 2016, a building inspector discovered "evidence of mold in the mechanical room" of the unit; and that "[a]s a result of the exposure to airborne mold[, they] were forced to vacate the residence and to dispose of their personal property including furniture, clothing, and other possessions because they were saturated with mold and could not be salvaged." Plaintiffs sought, among other relief, compensation for their physical injuries and property damage. Kundert's rental insurer, American Family Mutual Insurance Company, was named as an involuntary plaintiff because of its potential subrogation right to recover payments made to Plaintiffs under Kundert's policy.

¶7      American Family brought a claim against Westerhof Homes and General Casualty and a cross-claim against Plaintiffs to be made whole. American Family alleged that, around June 2016, a water leak developed in the unit above Kundert's unit; that "[a]s a result of that leak, water ran into [Kundert's unit] causing damage to personal property and resulting in the infiltration of mold in the building"; that Westerhof Homes' negligence in this regard damaged Plaintiffs' personal property and forced them to vacate the unit; and that American Family had paid them approximately $29,000 for property damage and temporary lodging.

¶8      Westerhof Homes answered Plaintiffs' and American Family's complaints and counterclaimed, alleging that Kundert negligently failed to warn it of a significant water leak and resulting mold in the unit and that Kundert interfered with its remediation efforts, leading to additional and unnecessary damage to the unit. Westerhof Homes also counterclaimed for lost rent and unpaid utilities,

alleging that Kundert's yearly lease ended April 30, 2017; that Kundert's rent payments and security deposit covered rent through only August 2016; that Kundert improperly vacated the unit around that time; and that Westerhof Homes could not re-rent the unit until March 2017.

¶9    Following various insurance coverage disputes, in December 2019, General Casualty notified the circuit court that Plaintiffs and American Family had agreed to settle their respective claims against Westerhof Homes and General Casualty. In January, 2020, the court approved a settlement agreement as to Freitag and, pursuant to that agreement, ordered General Casualty to pay approximately $81,000.

¶10    Over the next few months, all other claims were dismissed pursuant to stipulations and the only claims remaining were Westerhof Homes' negligence and contract counterclaims against Kundert.

¶11    Pursuant to the circuit court's scheduling order, a final pretrial conference was scheduled for February 6, 2020, and a trial was scheduled for March 9-13, 2020. Meanwhile, beginning in January 2020, Kundert and Westerhof Homes each filed numerous motions and briefs related to Westerhof Homes' counterclaims. We discuss the submissions germane to this appeal chronologically and by category.

¶12    In January, Kundert filed a motion and supporting affidavit requesting, in pertinent part, that the circuit court limit the length of Westerhof Homes' depositions of Kundert and Freitag. Kundert argued that the length of time that Westerhof Homes was demanding—one day for Kundert and a half day for Freitag—was excessive, "[g]iven that the only [remaining] issue is whether Ms. Kundert [timely] notified Westerhof … of the water and mold in her apartment" and that Freitag was fifteen years old at that time and twelve years old at the time

5

of the events giving rise to the litigation. Westerhof Homes responded that the requested deposition lengths were appropriate because there were additional remaining issues, including whether Kundert interfered with its mold- and water-remediation efforts and whether Kundert owed back rent for unlawfully terminating their lease. Following a January hearing, the court orally denied Kundert's motion.

¶13    At that January hearing, both parties also complained of dilatory discovery tactics by opposing counsel. Kundert argued that Westerhof Homes was preventing certain depositions from taking place and was improperly declining to provide documents responsive to requests for production. Westerhof Homes argued that it had been prevented from obtaining Kundert's medical records. Kundert had initially agreed to provide the records to counsel defending Westerhof Homes pursuant to a signed release, but Kundert ultimately declined to provide them to Westerhof Homes after she and Freitag settled their claims with General Casualty. The circuit court largely declined to address the discovery issues, but noted that it would revisit matters, if necessary, at the close of discovery.

¶14    Also in January 2020, Kundert filed a "motion for sanctions" under WIS. STAT. § 802.05 (2019-20),[3] on grounds that Westerhof Homes' counterclaims were frivolous. In a brief filed on the same day as the motion for sanctions, Kundert sought dismissal of Westerhof Homes' counterclaims, and attorney fees and costs. One basis for the dismissal request was Kundert's argument that there were no facts showing that she had contributed to the damage in the unit, which she contended was solely due to leakage from the upstairs unit and the improper construction of exterior brick on the building. Kundert further argued that Westerhof Homes could

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

not prove any damages on either its negligence or its contract claim because General Casualty had compensated Westerhof Homes in full for all property damage and lost rent. Although Kundert did not file any separate document captioned as a motion for dismissal, the court and parties characterized her request for dismissal as a motion and we follow their lead.

¶15 On February 3, 2020, Westerhof Homes filed its response, setting forth facts that, it argued, showed that Kundert had negligently contributed to the property damage by not timely informing it of the mold and water leakage in her unit and by interfering with its repair and remediation efforts. Westerhof Homes further argued that it had not been fully compensated by its insurer, namely, for its insurance deductible or for its time, pursuant to WIS. STAT. § 704.07(3)(a)2. (set forth in footnote 5, below). Westerhof Homes also contended that, as a matter of law, a tenant may be required to pay negligence damages regardless of whether the landlord was reimbursed from other sources. Westerhof Homes further argued that sanctions should be imposed against Kundert for bringing a frivolous dispositive motion on the eve of trial.

¶16 On February 6, 2020, Kundert filed a reply and accompanying exhibits, addressing matters already briefed and further arguing that Westerhof had "obstructed the deposition of his repair person, Bob Baker."

¶17 Meanwhile, on February 4, 2020, Westerhof Homes wrote a letter to the circuit court stating its intention to file a motion for default judgment "due to the events that transpired" at Kundert's February 4 deposition. On February 6, Westerhof Homes filed a "submission of facts in support of motion for default for Kundert's defiance of the court and egregious discovery abuse." In this "submission of facts," Westerhof Homes argued—with reference to Kundert's deposition

transcript—that Kundert's counsel preemptively limited the length of Kundert's deposition to three hours, improperly denied Westerhof Homes any opportunity to depose Freitag, and "egregiously interfered" with the course of Kundert's deposition.

¶18     Thus, as of the February 6, 2020 final pretrial conference, the circuit court was aware of ongoing discovery disputes between the parties and had before it Kundert's motion for sanctions, Kundert's motion for dismissal, and Westerhof Homes' submissions requesting default judgment.  With the parties' agreement, the court canceled the trial date scheduled for the following month and ordered several briefing schedules to address the various categories of motions.  The court permitted additional briefing on Kundert's motion for dismissal, which the parties submitted in March 2020.

¶19     Between the February 6, 2020 final pretrial conference and July 2020, the parties filed additional motions and briefing—some overlapping with or complementing briefing already filed—seeking sanctions, including Westerhof Homes' request for default judgment based on its allegations of Kundert's discovery violations.  As part of this briefing, and based on medical documents it had recently obtained, Westerhof Homes also alleged that Kundert's claims were "a fraud from the beginning" because Kundert filed suit claiming to be allergic to mold, despite allegedly knowing that she was not allergic to mold.

¶20     On July 14, 2020, the circuit court held a status conference, at which Westerhof Homes did not appear.  The court asked Kundert whether the motion to dismiss could be decided first, and Kundert stated that the motion could and should be decided first.  The court determined that it would decide the motion to dismiss first, following an oral argument that it scheduled for July 28.  The court noted,

however, that it usually obtained both parties' input on these sorts of decisions and that it was open to changing the scheduling if Westerhof Homes "oppos[ed] the plan" and provided "a reasonable justification for not participating [in the July 14 status conference]." The record does not contain any indication that Westerhof Homes objected to the court's scheduling decision.

¶21    On July 28, 2020, as scheduled, the circuit court heard oral arguments on Kundert's motion to dismiss. Preliminarily, the court noted—and Kundert agreed—that Kundert's motion was in fact a motion for summary judgment, given that Kundert had supported her motion with documents outside the pleadings. The court noted that both parties had filed documents outside the pleadings, and it determined that it would construe Kundert's motion as one for summary judgment. (Going forward, this opinion will refer to Kundert's motion to dismiss as a motion for summary judgment or as a dispositive motion.)

¶22    After giving Westerhof Homes the opportunity to state what material facts remained in dispute, the circuit court determined that the undisputed facts failed to show that Kundert's actions contributed to the damage in the unit. The court therefore granted Kundert's motion for summary judgment and determined that the parties' motions alleging discovery violations were moot. The court also denied the parties' motions alleging frivolous claims and denied Westerhof Homes' motion based on fraud.

¶23    Westerhof Homes subsequently submitted a letter to the circuit court requesting clarification on whether the court had also dismissed its breach of contract claim for lost rent. The court construed this submission as a request for relief from judgment and ordered briefing on the breach of contract claim. Following briefing, the court determined that Westerhof Homes was not owed any

lost rent because the undisputed facts showed that the unit was uninhabitable at the time Plaintiffs moved out and remained so for several months. As a result, the court also granted summary judgment on the breach of contract claim. Westerhof Homes appeals. We will set forth additional facts where relevant.

## DISCUSSION

¶24 We review a decision granting summary judgment de novo, affirming if the pleadings and evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2); *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶12, 275 Wis. 2d 35, 683 N.W.2d 75. We review for an erroneous exercise of discretion the circuit court's decisions on matters relating to scheduling and controlling its docket, along with whether and how to impose sanctions. *See Hefty v. Strickhouser*, 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820.

¶25 Westerhof Homes raises four arguments as to why summary judgment was inappropriate.[4] We address and reject these arguments, concluding that the circuit court properly granted summary judgment to Kundert.

---

[4] Westerhof Homes alludes to various additional arguments in the "statement of facts" section of its brief-in-chief that are not further developed in its "argument" section. For example, Westerhof Homes implies that there was some unfairness stemming from the circuit court's decision to construe Kundert's motion as a motion for summary judgment, and requiring Westerhof Homes to state at the hearing what material facts it believed were in dispute and what evidence there was to show such a dispute. In its reply brief, Westerhof Homes again mentions these issues, only this time in its argument section, adding that the circuit court did not provide notice to Westerhof Homes that the court was converting Kundert's motion to dismiss to a motion for summary judgment. Westerhof Homes is presumably referring to WIS. STAT. § 802.06(2)(b), which requires a court to provide notice and the opportunity to provide countervailing evidence before converting a motion to dismiss to a motion for summary judgment. Notably, however, Westerhof Homes did not raise this issue in the circuit court and we may decline to entertain this

*I. The Circuit Court Did Not Erroneously Exercise Its Discretion by Deciding Kundert's Motion for Summary Judgment Before Deciding Westerhof Homes' Motion Raising Discovery Disputes.*

¶26    Westerhof Homes argues that the circuit court was precluded from granting summary judgment in Kundert's favor because Kundert's counsel prevented Westerhof Homes from taking deposition testimony from Kundert and Freitag, "the most important witnesses." Westerhof Homes argues that only Kundert and Freitag had information about "what actually happened inside" their unit. It is undisputed that, contrary to the circuit court's order denying Kundert's motion to limit the length of time for depositions, Kundert's counsel informed Westerhof Homes that she was limiting Kundert's testimony to three hours and would not make Freitag available for deposition. It is also undisputed that it was Westerhof Homes that ultimately terminated Kundert's deposition (after approximately two and a half hours) based on its view that Kundert's counsel was inappropriately interfering with Westerhof Homes' examination of Kundert by "making baseless objections, improperly instructing [Kundert] not to answer, continually coaching, and physically kicking Kundert when she failed to obey [counsel's] coaching."

---

argument on forfeiture grounds. *See **Village of Trempealeau v. Mikrut**,* 2004 WI 79, ¶15, 273 Wis. 2d 76, 681 N.W.2d 190.

   Aside from forfeiture, we also reject any arguments Westerhof Homes may mean to make on these topics and any other topic raised in the fact section of its brief-in-chief for the following reasons. First, an appellant must specifically set forth its arguments in the "argument" section of its brief-in-chief. *See* WIS. STAT. RULE 809.19(1)(e). Second, although Westerhof Homes' reply brief reiterates these assertions in its argument section, we do not consider issues that are raised for the first time in a reply brief. *See **State v. Marquardt**,* 2001 WI App 219, ¶14 n.3, 247 Wis. 2d 765, 635 N.W.2d 188. Third, Westerhof Homes has failed to present a developed legal argument in either of its briefs as to why the summary judgment procedure employed by the circuit court was improper. *See **State v. Pettit**,* 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

¶27    Westerhof Homes suggests that, to the extent its response to Kundert's motion for summary judgment was "imprecise" or not as "specific" as it could have been, this was because Kundert's counsel prevented Westerhof Homes from taking deposition testimony from Kundert and Freitag. We construe Westerhof Homes to argue that the circuit court erroneously exercised its discretion in scheduling and deciding Kundert's motion for summary judgment without first deciding or resolving Westerhof Homes' motions or arguments relating to this discovery dispute.

¶28    We do not agree that the circuit court erroneously exercised its discretion in this regard. As previously noted, during a July 14, 2020 status conference, the court determined that, of all the pending motions, it would decide Kundert's dispositive motion first, on the same day and immediately following an oral argument it scheduled for July 28. Westerhof Homes did not attend the July 14 conference despite being properly noticed. The court nonetheless stated that it would revisit its scheduling decision —*i.e.*, "back the train up the tracks and … start off again where we started this afternoon"—if Westerhof Homes informed the court that it "oppose[d] the plan[]" and provided "a reasonable justification" for missing the conference. There is no indication in the record that Westerhof Homes opposed the court's plan, provided a reasonable justification for missing the July 14 status conference, or otherwise sought to reschedule the July 28 oral argument and ruling.

¶29    Moreover, the record reflects that, at least as of July 27, 2020, Westerhof Homes was aware that Kundert's dispositive motion was the subject of the July 28 hearing. On that date, Westerhof Homes wrote a letter to the circuit court "in anticipation of" the next day's hearing, which addressed substantive matters relating to Kundert's dispositive motion.

¶30    Thus, at some point after the July 14, 2020 status conference, Westerhof Homes learned that Kundert's dispositive motion was to be argued and decided on July 28.  At that time, Westerhof Homes was aware of Kundert's counsel's conduct during Kundert's deposition, and was aware that counsel had refused to allow Westerhof Homes to depose Freitag.  Again, however, the record reflects that Westerhof Homes never opposed the circuit court's plan to address Kundert's dispositive motion before addressing any other pending motions.  We conclude that Westerhof Homes, by its conduct, acquiesced to the court's scheduling decision and forfeited its right to challenge that decision on appeal.  *See Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶15, 273 Wis. 2d 76, 681 N.W.2d 190 ("Issues that are not preserved at the circuit court ... generally will not be considered on appeal.").

## II. *The Undisputed Facts Establish That Kundert Is Entitled to Summary Judgment Dismissing Westerhof Homes' Negligence Counterclaim.*

¶31    On summary judgment, the circuit court determined that Kundert is entitled to summary judgment dismissing Westerhof Homes' negligence counterclaim because the undisputed facts show that the damage to Kundert's unit was caused by circumstances outside Kundert's control and that Westerhof Homes presented no evidence establishing or raising a genuine issue of fact as to whether Kundert's actions contributed to the damage.  *See* WIS. STAT. § 802.08(3) (where the movant makes a prima facie case for summary judgment, the opposing party may not simply rest on allegations in the pleadings but must set forth specific facts creating a genuine issue for trial).  Westerhof Homes argues that Kundert is not entitled to summary judgment because the undisputed facts show that Kundert contributed to the damage by:  (1) not timely notifying Westerhof Homes upon first becoming aware of mold infiltration, water leakage, or resulting damage in the unit;

and (2) interfering with Westerhof Homes' efforts to repair the unit.[5] We examine each argument in turn, concluding that there is no genuine issue of material fact on these points and that the undisputed facts show that Kundert's conduct did not contribute to the damage.

¶32 As background, it is undisputed that Kundert notified Westerhof Homes of mold and water leakage in her unit in the June 30, 2016 email reproduced above. *See* ¶3. Kundert testified during her deposition that she discovered these problems on or around June 30, after arriving home from a trip to California. Kundert testified that "there was water coming down the carpet," "[e]verything was

---

[5] In support of its negligence counterclaim, Westerhof Homes relies in part on WIS. STAT. § 704.07(3)(a)2., which provides:

> If the premises are damaged, including by an infestation of insects or other pests, *due to the acts or inaction of the tenant*, the landlord may elect to allow the tenant to remediate or repair the damage and restore the appearance of the premises by redecorating. However, the landlord may elect to undertake the remediation, repair, or redecoration, and in such case the tenant must reimburse the landlord for the reasonable cost thereof; the cost to the landlord is presumed reasonable unless proved otherwise by the tenant. Reasonable costs include any of the following:
>
> .…
>
> 2. At a reasonable hourly rate, time the landlord spends doing any of the following:
>
>   a. Purchasing or providing materials.
>
>   b. Supervising an agent of the landlord.
>
>   c. Hiring a 3rd-party contractor.

(Emphasis added.)

Because we conclude for the reasons set forth above that the undisputed material facts do not show that any damage occurred "due to the acts or inaction of the tenant," this statute does not assist Westerhof Homes in establishing a negligence counterclaim.

soaked, covered with fuzz," "[t]here was black in the back walls," "[t]he ceiling light [was] filled with water and [there was] water running down the walls." As to location, she specifically testified to standing water and mold in her closet, a wet bedroom carpet, and water running intoFreitag's closet. Kundert testified that Bob Baker, Westerhof Homes' repairman, was on the premises when she arrived home from her trip. Kundert immediately told Baker about these issues, and Baker visited her unit that day. Baker attempted to investigate or remediate the problems by pulling out some drywall.

¶33    It is undisputed that at some point during the first half of July 2016, following an argument between Kundert and Westerhof, Kundert changed the locks on her unit. However, the parties dispute whether Kundert's actions prevented Baker from doing further work in the unit during that time. According to an email from Westerhof to Kundert, Baker was able to return to Kundert's unit on July 17. In that email, Westerhof informed Kundert that he was contacting his insurance company and would later inform Kundert of his "plan." It is also undisputed that Baker was a repairman and not a professional remediator and that, on September 6, Westerhof Homes contacted a professional remediation firm to restore the unit. The remediation firm began work in the unit on September 19 and completed its work on both the upper and lower units on November 21. Although the record is unclear as to the precise date the firm finished its work on the lower (Kundert's) unit, the unit was repaired no later than October 14.[6]

---

[6] Westerhof Homes states that remediation work in Kundert's unit was completed on September 17, 2016, but the underlying summary judgment evidence does not support this assertion.

A.  Timely Notification

¶34    Westerhof Homes points to evidence that it argues raises a reasonable inference that Kundert did not timely notify it of water leakage, mold, and resulting damage to the unit.  We conclude that even under the summary judgment standard—under which all reasonable inferences are drawn in favor of the nonmoving party, WIS. STAT. § 802.06(2)—none of the evidence Westerhof Homes points to supports the conclusion that Kundert waited an unreasonable (or any) amount of time between when she was first aware of the mold, water leakage, and resulting damage and when she informed Westerhof Homes of those conditions.

¶35    First, Westerhof Homes points out that Kundert complained that the unit "smelled moldy" the first time she walked into the unit (which was August 28, 2015) and in March 2016; that she stated in a July 5, 2016 email, "There is still Mold in there and has been for some time.  This did not just happen."; and that, on or around October 24, 2016, she "told her physician [that] she was in a 'home for 6-9 months that had black mold.'"[7]  According to Westerhof Homes, this evidence supports the conclusion that "Kundert delayed notifying [it] of the water/mold problem for … 6 to 9 months."  However, these facts do not support the reasonable inference that Kundert actually observed or otherwise knew of any mold, water leakage, or resulting damage in her unit before June 30, 2016 (in fact, Kundert specifically testified that she did not see any mold or know it was there when she

_____

[7] It is somewhat unclear when Kundert allegedly made this statement to her physician because Westerhof Homes quotes excerpts from its own circuit court briefing on this point and because Kundert's medical records are not part of the appellate record.  The implication from Westerhof Homes' circuit court briefing, however, is that Kundert made this statement to her physician on or around October 24, 2016, since this was, apparently, when the physician made this note in Kundert's medical record.  Kundert does not point to evidence to the contrary.

had complained prior to June 30, 2016). In sum, these facts—that Kundert believed she smelled mold in August 2015 and March 2016; that Kundert believed, once she viewed the mold in her unit, that it had "been there for some time"; and that Kundert believed, several months after moving out and once she already knew that the unit contained mold, that she had lived with black mold for six to nine months[8]—do not support the conclusion that Kundert delayed notifying Westerhof Homes of *known* water and mold problems in the unit.

¶36     Second, Westerhof Homes argues that "Kundert testified that it may have taken her a week or two from when she discovered [the mold and water leakage] to inform Westerhof of the problem." This assertion misstates Kundert's deposition testimony: when asked how long she waited to email Westerhof after discovering these problems and if she waited more than two weeks to do so, Kundert repeatedly stated that she did not remember, not that she may have waited a week or two. Thus, Kundert's testimony does not support the inference that she waited one or two weeks before informing Westerhof of the mold and water issues.

¶37     To the extent Westerhof Homes means to suggest that Kundert knew of the problem prior to the day she notified Westerhof Homes' maintenance man, Bob Baker, Westerhof Homes presents no evidence to contradict Kundert's undisputed testimony on this point. Kundert testified that she informed Baker of the mold and water issues the day she discovered them, and that Baker immediately attempted to address the problem, including by removing drywall. Consistent with

---

[8] Because Kundert moved into the unit in September 2015 and stopped living there sometime shortly after discovering mold on or around June 30, 2016, the reasonable inference from this evidence is that Kundert—having *already* moved out—expressed to her physician that black mold had been in the unit the entire time she lived there. Even viewing this evidence in the light most favorable to Westerhof Homes, there is no basis to conclude that Kundert knew about the mold six to nine months before reporting it.

this testimony, when Westerhof asked Kundert whether she could have waited more than a week to notify Westerhof of the issue, Kundert responded: "You were conferring with Bob at that point. Was he not your maintenance man? He was telling you what was going on. That's what he told me. He was telling you exactly what was going on, and you were instructing him on what to do. So you knew through Bob what was going on." Thus, even if Kundert's June 30 email to Westerhof informing him of the water and mold issues was not sent the same day that Kundert first learned of them, that fact is insignificant given the uncontroverted testimony that Westerhof Homes' own maintenance man learned of the problems the same day that Kundert did.

¶38 Third, Westerhof Homes argues that Kundert must have known about problems in the unit before June 30, 2016, because "[a]ccording to Oscar Guttierez, the remediator, the amount of mold was so great that it would have been visible for months." But it is undisputed that Gutierrez did not visit the unit until, at the earliest, September 7. Additionally, Gutierrez described mold as mainly growing behind the drywall and testified that "[y]ou'd have to look for it" to see it. Therefore, Gutierrez's testimony that the mold he saw in September 2016 would have been visible for "[m]onths" is consistent with Kundert's testimony that she viewed and reported the mold on or around June 30, 2016. Gutierrez's testimony does not support the inference that Kundert saw or knew about the mold *before* June 30.

¶39 Fourth, Westerhof Homes argues that "it is within the ordinary experience of jurors to have to deal with leaks in their home," so jurors know that most tenants "remedy the problem as soon as possible to prevent additional damage." Therefore, Westerhof Homes' argument continues, "[b]ased upon common experience, a jury reasonably could conclude that the mold and water damages from an upstairs leak should never have become so extensive." This

argument ignores Kundert's undisputed testimony that she noticed the mold upon returning from a trip to California, and the testimony discussed above from Gutierrez. There is no evidence that Kundert, acting with reasonable vigilance, should have known about the problem earlier and taken additional steps to "remedy the problem as soon as possible."

¶40 Finally, Westerhof Homes argues, "Here, too, additional deposition testimony from Kundert and any deposition testimony from Freitag could have been very illuminating." As discussed above, however, we have already concluded that Westerhof Homes' conduct during the litigation precludes it from now arguing that its briefing and motions relating to this discovery dispute should have been addressed and resolved prior to Kundert's motion for summary judgment. Accordingly, we do not address this argument further.

¶41 Based on the foregoing, we conclude that none of the evidence upon which Westerhof Homes relies supports the inference that Kundert delayed reporting water leakage, mold infiltration, or resulting damage to the unit.

### B. Interference with Attempted Repairs

¶42 Westerhof Homes argues that "by changing the locks, kicking Baker out, and delaying repairs, Kundert obstructed abatement for another two weeks" and that "[t]his is more than sufficient evidence from which a jury could reasonably conclude that Kundert was a substantial factor in causing damage to Westerhof's property." We conclude that none of the evidence supports the reasonable inference that Kundert's purported interference with Westerhof Homes' attempted repairs contributed to the property damage or increased remediation costs.

¶43     Westerhof Homes directs us to emails between Kundert and Westerhof, sent between July 4 and July 18, 2016.  In one of these emails, sent July 4, Westerhof stated that Kundert "kicked … out" Westerhof's repairman Bob Baker that day, and Westerhof asked Kundert when she would "allow my people to come in to do the work that needs to be done."  After a few days of back-and-forth emails, Kundert suggested that Baker return Saturday, July 9.   The parties corresponded about related matters (including Kundert's proposal that she move into a different unit for the same rental price, which Westerhof rejected), and on July 8, Kundert wrote, "I will fight in court that this has been a racket from the get go….   I will start moving out an[d] have my attorney contact you….   In the meantime Stop emailing.  I'm done with this place."  On July 10, Westerhof wrote to Kundert, "Bob informed me that you changed the locks….  [Y]ou are delaying our efforts to make repairs in your townhouse."  In a July 18 email, Westerhof stated that "Bob finally got in there yesterday."

¶44     We first observe that, although these emails establish that Westerhof wrote that these events occurred, they do not establish that the events in fact occurred.  We nevertheless assume that Westerhof would have presented testimony at trial consistent with the facts stated in the emails, and a fact finder could have credited Westerhof's testimony about the parties' actions between July 4 and 18, 2016.

¶45     Even with that assumption in Westerhof Homes' favor, the undisputed evidence indicates that Westerhof Homes could have allowed Baker to enter the unit to perform repairs at any point during this time period but chose not to.  During his deposition, Westerhof agreed that "in an emergency [he] as a landlord ha[s] a right to enter one [of his] apartments without notice" and that he "probably" has the "right to enter an apartment with a 24-hour notice stuck to the door."  When asked why he

did not instruct Baker to call a locksmith and remove Kundert's new locks on the apartment, Westerhof testified that it was because he considered Kundert to be someone he "needed to be very careful with" and that he "didn't want her making more accusations against" him.

¶46 Further, in response to Kundert's argument on appeal that Westerhof admitted he had the right to enter the unit, Westerhof Homes merely responds in a footnote, "Sure, Baker was physically able to break in. But that does not mean it would have been smart, let alone a legal obligation." But the question here is not whether removing the locks would have been "smart" or a "legal obligation," but rather, whether Kundert prevented Westerhof Homes from performing remediation work during the time period in question. The undisputed facts establish that Westerhof Homes was not prevented from performing this work.

¶47 Even assuming, however, that there is a genuine dispute about whether Kundert's actions prevented Baker from entering the unit during this time period, the dispute is not material. This is because the evidence does not show that any temporary obstruction by Kundert ultimately contributed to the property damage or increased remediation costs. Westerhof Homes provides no expert or other evidence supporting its position on these points. Rather, the undisputed evidence is that Westerhof Homes contracted for remediation work from a different contractor, which eventually took place in September and October 2016, after Kundert had already vacated the premises. Under these circumstances, there is no reasonable inference that Kundert's interference with Baker's repairs during the first

half of July, even if it occurred, contributed to the costs Westerhof Homes ultimately incurred in September or October to make the unit habitable again.[9]

¶48    In sum, because the only conclusion from the undisputed evidence is that the mold, water leakage, and resulting damage was caused by circumstances outside Kundert's control, Westerhof Homes' negligence claim fails as a matter of law.[10]

*III. The Undisputed Evidence Shows That Kundert Is Entitled to Summary Judgment Dismissing Westerhof Homes' Counterclaim for Breach of Contract.*

¶49    Westerhof Homes argues that Kundert is not entitled to summary judgment dismissing Westerhof Homes' counterclaim for breach of the lease. Kundert responds she is entitled to summary judgment because—among other reasons—it is undisputed that General Casualty reimbursed Westerhof Homes for all lost rent. Kundert correctly notes that we may affirm the circuit court's summary judgment order on a ground not relied on by the circuit court. *See **Vanstone v. Town of Delafield***, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995) ("[W]e may

---

[9] Gutierrez, on behalf of the remediation firm, testified that the firm did not remediate the mold in the building because "we were not paid for mold remediation, we were paid to mitigate the loss and rebuild it." Elsewhere, however, Gutierrez testified that the work the firm performed resulted in the unit meeting some type of mold testing standard, allowing the unit to be deemed habitable again. This opinion uses the term "remediation" generally, to refer not solely to mold remediation (which Gutierrez apparently did not do, as he defined the term) but also to the mitigation work Gutierrez's firm performed in the unit.

[10] Because we conclude that there is no evidence supporting a reasonable inference that Kundert's actions contributed to mold and water leakage problems, we do not address Kundert's additional argument that Westerhof Homes' claim fails as a matter of law because it cannot show any damages, given that General Casualty reimbursed it for all remediation costs. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

affirm on grounds different than those relied on by the trial court."); *Langridge*, 275 Wis. 2d 35, ¶12 (we review a decision granting summary judgment de novo).

¶50    In its reply brief, Westerhof Homes does not dispute that General Casualty reimbursed it for these contract damages, nor does it make any other argument as to why it should nonetheless be allowed to seek these same amounts in lost rent from Kundert.[11]  Because the undisputed facts show that Westerhof Homes was already compensated for all damages that it could recover in its breach of contract claim, and Westerhof Homes does not develop an argument to the contrary, we conclude that Kundert is entitled to summary judgment dismissing Westerhof Homes' breach of contract counterclaim.

---

[11] Westerhof Homes argues in its reply that it was not reimbursed for its $3,000 insurance deductible, but appears to make that argument only with respect to its negligence claim.  However, to the extent Westerhof Homes means to argue that it was not fully reimbursed by its insurer with respect to its *contract* claim because of its deductible, it does not develop that argument.  Specifically, Westerhof Homes does not show that it was required to pay the deductible for its insurance claim for lost rent, nor does it show why the deductible would not have been incurred regardless, given that Westerhof Homes did extensive remediation work for which it was reimbursed by its insurer.

Similarly, Westerhof Homes argued in the circuit court and argues in its reply on appeal that, with respect to its *negligence* claim, the collateral source rule allows Westerhof Homes to recover from "the tortfeasor," Kundert, regardless of whether Westerhof Homes was reimbursed by its insurer for the damage caused to the property.  Although we do not construe Westerhof Homes to also be advancing a collateral source rule argument with respect to its *contract* claim, we note that Westerhof Homes points to no legal authority that stands for the proposition that a plaintiff landlord may recover under *contract* (as opposed to under tort) where the plaintiff has already been reimbursed.  *See* ***Paulson v. Allstate Ins. Co.***, 2003 WI 99, ¶30, 263 Wis. 2d 520, 665 N.W.2d 774 (under the collateral source rule, a "*tortfeasor* who is legally responsible for causing injury is not relieved of [the tortfeasor's] obligation to the victim simply because the victim had the foresight to arrange, or the good fortune to receive, benefits from a collateral source for injuries and expenses." (emphasis added; internal quotation marks and quoted source omitted)); *see also* ***Blumenfeld v. Jeans***, 2011 WI App 107, ¶4, 336 Wis. 2d 430, 804 N.W.2d 692 ("[T]he collateral source rule provides that a *personal injury plaintiff's* recovery is not to be reduced by the amount of compensation received from other sources, i.e., sources 'collateral' to the defendant." (emphasis added; internal quotation marks and quoted source omitted)).

*IV. The Circuit Court Did Not Err in Not Granting Westerhof Homes' Motion for Sanctions, Including Default Judgment.*

¶51     Westerhof Homes argues that the circuit court erred by not granting its motion for sanctions, including default, because "Kundert's discovery violations were egregious and without excuse and because her claims were fraudulent from the start."[12]

¶52     As to discovery violations, Westerhof again argues that Kundert's counsel improperly curtailed Kundert's deposition and prohibited Freitag's testimony.  Westerhof Homes further argues that counsel failed to provide medical records in response to a discovery request until two days before discovery closed (and perhaps did not provide all the medical records requested).  As discussed above, however, we have concluded that the circuit court did not erroneously exercise its discretion in first hearing and deciding Kundert's motion for summary judgment. Once Kundert's motion for summary judgment was decided in Kundert's favor, the court determined that the parties' other motions were moot.  By this statement, the court recognized the reality that Westerhof Homes' motion for default judgment for Kundert's alleged discovery violations could not, by that point, be decided in Westerhof Homes' favor (at least, not without retracting the summary judgment ruling the court had just made).

¶53     In addition, after deciding Kundert's motion for summary judgment and determining that the parties' other motions were moot, the circuit court asked

---

[12] Westerhof Homes also appears to request that we independently sanction Kundert for this same alleged misconduct.  Westerhof Homes fails to provide any legal authority or a developed legal argument supporting such a request, and we reject it on that basis. *See Pettit*, 171 Wis. 2d at 646-47 (undeveloped legal arguments and "[a]rguments unsupported by references to legal authority will not be considered").  We further note that as an appellate court, we are not in the position to independently sanction Kundert or to resolve, in the first instance, the bulk of Westerhof Homes' motions and arguments on these matters.

the parties if there were any additional issues that needed to be addressed "to make sure I'm not missing something that I should have decided." Westerhof Homes did not at that time, or later by motion to reconsider, argue that it was due attorney fees and costs as a sanction for Kundert's alleged discovery violations. Thus, a separate reason exists to uphold this portion of the court's ruling, namely, that Westerhof Homes forfeited the specific argument that it was due attorney fees and costs incurred as a result of Kundert's conduct during discovery. *See Mikrut*, 273 Wis. 2d 76, ¶15.

¶54 In response to the circuit court's question about "missing something," Westerhof Homes did argue that the circuit court should grant default judgment because Kundert perpetrated "a fraud on the Court" by filing suit even though she allegedly knew that she was not allergic to mold. The court responded that Westerhof Homes had not pled a fraud claim. Westerhof Homes does not present any cogent argument as to how the court erred in rejecting its fraud claim as not properly pled. Moreover, and crucially, Westerhof Homes never explained below, and does not explain on appeal, how the issue of whether Kundert's (now-dismissed) claims were fraudulent is relevant to Westerhof Homes' *counterclaims* for negligence and breach of contract. In its reply brief, Westerhof Homes suggests that the fraud issue is related to the contract counterclaim because Kundert might have alleged that she terminated the lease because she was allergic to mold. However, this argument is undeveloped and unconvincing, particularly in light of the undisputed evidence that Kundert's unit was infiltrated with mold and was uninhabitable regardless of whether Kundert was allergic to mold. We decline to consider further Westerhof Homes' inadequately developed arguments. *See Pettit*, 171 Wis. 2d at 646.

**CONCLUSION**

¶55     For the foregoing reasons, we affirm the order of the circuit court.[13]

*By the Court.*—Order affirmed.

This opinion will not be published.     *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[13] Westerhof Homes repeatedly cites solely to its appendix and not to the appellate record. Westerhof Homes also, at times, cites to incorrect page numbers or to records that either do not exist or are located in a different location in the appellate record. Along similar lines, Kundert at times cites solely to Westerhof Homes' appendix or to the circuit court record instead of to the appellate record, and at times does not cite to the correct page number. These practices waste court time and resources because they require the court to independently locate the cited material in an extensive record without assistance from the parties. We remind both parties that citations must be accurately made to the appellate record and that failure to follow the rules of appellate procedure is grounds for sanctions. *See* WIS. STAT. RULES 809.15, 809.19(1)(d), (e), (3)(a)2., (4)(b), 809.83(2).